This morning, Common Cause v. Individual Members, I think that's the State of Indiana, I believe. All right. Thank you, Judge Caney. You're losing your audience. That's right. Indiana's getting a lot of TV, but apparently they're not that interested in your cases. Okay. Thank you, Your Honor. May it please the Court. This case is ostensibly about the right to a meaningful vote in the context of Marion County judicial elections. But as the Supreme Court held in the Lopez-Torres case, voters have no right to a contested election. What is more, the Supreme Court has affirmed that parties, that is political parties, may be limited to fewer nominations than at-large seats in at-large elections. And no previous court, besides the district court below, has held that voters have the right to vote for a preferred party to sweep an at-large election. So we don't have any precedent for the sort of meaningful right to vote, or right to a meaningful vote, that the plaintiffs are invoking in this case and that the district court embraced. The first place to start, of course, is this idea about at-large elections for multi-member districts, which both this court and the Supreme Court have acknowledged are not per se unconstitutional. They are permitted. Mr. Fish, you would acknowledge this is probably a unique system in the United States, is it not? I don't think any of us have been able to find anything quite like it, Your Honor. To appear on the ballot, anyone can ask to have their name appear on the ballot. If they're a part of the party, a Republican can go to the clerk's office, register, and be on the ballot. Well, there's a nominating system, of course, for the major parties, if that's what we're talking about, where there's a... Well, I know it goes to the general election, but I'm talking about the initial primary election. No, I understand. There's a slating process in Marion County where the major parties come together for a slating convention and those who... Go for a convention. Right, and so those who are interested will go through the process that the parties describe. There's a slate. Then, if you are not slated but you're interested in running, you may then get on the ballot to challenge the slate. Do those slated then pay a slating fee? Well, there is, I think... I know you don't want to call it a slate. Well, no, of course not. But, no, I think there is some need to cover the cost. Each party does that. Cover the cost of the election, cover the cost of the system. I think that's the point. But, you know, that is nothing that has even directly been challenged here. I mean, what's been challenged is not the process of nominating candidates, but the process of having an election, where, as it happens, for lack of support, there are no independents and no third-party candidates and no write-ins that show up. If I am a litigant appearing in court, why do I care if the court as a whole is politically balanced? Am I not only concerned that the judge before whom I would stand is unbiased and not going to decide my case based on political affiliation? In other words, how does this system of election help that?  The first is there are cases where the court sits, if not en banc, then at least in larger panels that are balanced in terms of partisan affiliation, districting from Marion City County Council, for example. Beyond that, I think the point is to have a balanced bench in the aggregate so that those who are coming before the courts know they have a balanced chance of drawing either a Republican, Democrat, or an Independent or Libertarian. Beyond that, the court itself, the way it manages itself is balanced. You have an executive committee that has no more than two from each party and the chairmanship rotates from one party to the next, or if there is a third party, they would be included as well. So the actual management of the court depends on this system. The civil divisions, the criminal division, roughly balanced, not quite precise, but roughly balanced between the two parties. So again, if you are on the civil docket or the criminal docket, you have an expectation of drawing, you know, roughly equal chance of drawing either major party judge. What's the term for these judges? Six years. Six years. And then they stand, they have to be re-nominated again, and then stand for contested, or at least slated election. That's right, that's right. You go through the same process, and there are circumstances where the parties have performed a gatekeeping function, and they haven't re-slated incumbents. It does happen. But in response to Judge Rovner's question, isn't the same concern that you're looking at people who have an obligation or a deference to the party, which put them where they got to be? Well, look, there are many ways one could go about trying to ensure judicial independence and trying to balance the idea of judicial independence with accountability and public accountability. There are many different jurisdictions try many different methods. There is no one that is constitutional that excludes the others. There may be other ways to do it, and there are strengths and weaknesses for each system. Like appointments. Appointment, merit selection, that's one way to go about it. Nonpartisan elections is also some ways that we go about it, direct partisan contests. I think the legislature is entitled to examine each jurisdiction and come up with what it thinks is the best solution, given whatever the dynamic is for that locale. Well, is it possible that there have not been any independent candidates on the ballot since the partisan balance statute took effect? Because those candidates see an even more preordained election run by the parties where their chance for success is even lower, if it exists at all. If that's their view, then that's not a function of this statute. Let me explain. Because each major party nominates only for half the seats, if you're an independent and you go out and get your 2% of the signatures, which is roughly between 3,000 and 5,000 signatures in any given cycle, and you want to run a targeted election, you don't have to run against both parties. You only have to run against one party. You can focus and concentrate your efforts on one side instead of running against both. That is a much better playing field for the independents and for the third parties than a system that permits both major parties to sweep all the seats. But the independents don't seem to realize this. Well, I don't think there's support. I mean, they haven't shown up. I just don't think there's the public support. I mean, I don't think we can infer anything else. There isn't public support for independent candidates. Speaking of the public, the Marion County Judicial Study Commission stated that judges should be responsible to the public as elected officials. I've been wondering if that's the position of the Election Commission as well, because it seems to me that judges are responsible for upholding the law and we're not supposed to be worrying about placating the public. I think any properly constituted judiciary would have that expectation. But we know from the Supreme Court's decision in a variety of cases that that does not negate judicial elections, partisan, nonpartisan, or otherwise. Once we have accounted for that, that expectation of judges and permitted elections for judges to occur anyway, I don't think that there's any further implication for this law. We have the parties performing very important gatekeeping functions. We have the opportunity for independents and third-party candidates, a reasonable opportunity to be on the ballot if they have public support, to actually target one party or the other. This is a much better system, I think, for actually hoping for some public accountability than if it's just the parties and you have to run against both parties trying to fight it out for all the seats. But what about voters who can't vote in a primary? Are they able to have any input into judicial selection in Marion County? Of course. They may recruit and support independent candidates or third-party candidates. That's the system that we have, and that has always been sufficient from the Supreme Court's point of view when it comes to this idea of a meaningful and effective vote. The idea is, is there sufficient third-party access? Storr v. Brown, that line of cases, they're asking for the minor parties, is there sufficient access? There's no challenge here to the access points for the independents and the third parties. Now, we do have some precedents that are helpful here. We've got the Blakey case from New York, the Lofrisco case from a school board election, the Hechinger case from the D.C. Council. There you had, again, situations where the parties were not permitted to nominate the same number of candidates as seats that were available. And so you had, functionally, the same kind of system. You didn't have as many seats, perhaps, but it was maybe four seats at large a party could nominate to. Those courts upheld those systems in the Supreme Court. In Blakey, dismissed if we're not presenting a substantial federal question and summarily affirmed in Hechinger and Lofrisco. So we have in those cases this idea that there is no right to a partisan sweep. And, in fact, that's the way the Hechinger court put it, was you don't have the right to come in as a major political party and sweep all the seats. But none of those other cases involve the election of judges, correct? That's correct. That's correct. That's why I'm reluctant to say they're on all fours because there is that significant distinction. So then I wonder why, if the goal is to elect fair and impartial individuals to serve as judges in this scenario, why is this policy in place to, in effect, try to show partisan balance? I mean, if that seems to be the objective here, why is partisan balance with regard to the judiciary in Marion County a goal? Well, I think a couple of responses. Number one is you have a tradition in Indiana, of course, of judicial partisan elections. So that is what the public expects. That's what the public sees. Except in a number of counties. Well, four. Four except when the politicians got around to changing it in a couple of them, right? Well, so Fort Wayne nonpartisan, Evansville nonpartisan, St. Joe and Lake merit selection. But predominantly partisan election. Okay. Party, partisanship, also a proxy, I think, for judicial philosophy. There's an expectation. And the appellate courts. I'm sorry? Oh, the appellate courts, of course, yes. Judicial nominating commission appointment by the governor. We have an expectation that the parties will have different priorities as they screen their candidates. And that their candidates, as a result, will have different judicial philosophies. And they'll bring that to the bench. And I think that's probably the most important distinction between the two sets of candidates. Do they not also bring to the bench the fact that they're very beholden to the political party that has complete control over their electoral fate? Well, if that's true, there's no distinction between that commitment here and a commitment in a situation where both parties can sweep all the seats. It just has no bearing. That's the only thing that's in question. We're not facing a challenge to the slating and primary process where all of that accountability to party comes in. We're talking about whether coming out of that system, one party or the other can win or take all. We had that situation in 1970 where the Republicans took all the seats. And then in 1974, in the wake of Watergate, where the Democrats took all the seats. We don't want that kind of instability. We want to have some sense of stability, some sense of balance based on the contributions of each of the major parties. What's the perceived instability? Those were election results. Right. The shifting back and forth, the sweeping out of all the judges, bringing in a new set of judges. The idea that the courts then, there's going to be upheaval, that there is an impact on the management and on the decision-making process. And this is not about, in many respects, I think it's fair to step back and say this is not about bringing in an entirely new view of government. This is supposed to be about law again. Aren't the terms staggered? I'm sorry? Are the terms staggered, these six-year terms? Yes, there are. So not everyone's up every six years. Right. They are staggered. So it's not a sweep. Well, but it's a pretty dramatic shift if you have one party versus the other. A third every election? Roughly. I don't think they're quite even in terms of the staggering. But yes, I'm sorry. I'm sorry. I'm going back again because it seems to me that Indiana may have set up a judicial election system that is so heavily dominated by the Democratic and Republican political parties that independents no longer see the possibility of election. And so, of course, they refrain from running. Who's going to spend all that money and time? I think in Marion County their chances are better than anywhere else. But then you think that, but where are all these independents? I'm talking about in terms of mathematics. I'm talking about in terms of how you go get your votes and build your coalitions. And I'm talking about reality. But the reality is it's no worse in Marion County than anywhere else. And saying that one party or the other can sweep all the seats isn't going to change whatever perception independents have of their chances. Well, of course it is. Of course it is. I'm an independent, and I know that, you know, you've got the Democrats, you've got the Republicans. Where am I? Well, if you are in the Marion County system, you have a position where you can target one party. You don't want me to be a judge. No, it's a question of building support. It's a question of building support and targeting one side or the other versus having to compete against both parties. You don't have to compete against both parties, whereas if you go to, you know, Hamilton County, for example. But that's, you're an independent. You're not angry with the Republicans or the Democrats. You are an independent. Sometimes you vote for Democrats. Sometimes you vote for Republicans. Sometimes you don't vote because you can't stand any of them. And as a voter, you have the ability to go out, and if you're not a lawyer or you're not interested in becoming a judge, you can recruit and support independent candidates, and you have a much better chance in this system than you would if one party could sweep all the seats, because then you'd have to run against both parties. Well, I think I'll reserve the remainder of my time. Thank you. May it please the Court. The statute here, by design, produces elections on election day, where there is no electoral choice.  It's the right to participate in an electoral process that is structured to maintain the integrity of the democratic system. This statute here is not designed to maintain the integrity of the democratic system. It's not designed to create a meaningful vote. We've been discussing, the Court has been discussing, the role of independents. As was noted, an independent is not someone who wants necessarily to vote for a fringe candidate. An independent is someone who wants the ability to weigh the merits of a Democrat or Republican and vote based on merit, not based on party affiliation. When an independent walks into the voting booth in Marin County on election day, if there are 16 judges running, what the independent will see is something that says, here are 16 names for 16 positions. That is not the democratic system. And the rationales that the state proffers do not satisfy any burden. Remember, we're talking about the right to vote here. And the Supreme Court has been quite clear that there's a sliding scale. But even at the low end, the rationales here have to be supported by relevant and legitimate state interests sufficiently weighty to justify the limitations. And what are the state's interests? One, promote judicial stability and ensure a balance of views and philosophy. As was noted, to some extent, instability is safeguarded against by the fact that the judges are not all elected at once. On the other hand, if you decide to have an election, you can't say we don't want anyone to lose. The state has made a choice to have an elective system. And if you want to call an incumbent losing instability, then instability is a feature of the electoral process. Now, it is true that there is no constitutional right to a contested election. That is, of course, true when... the election is uncontested because independents choose not to run. That's not the fault of the statute, right? There is no right to a contested election. However, there is a right to have a statute that is structured to allow for a meaningful vote. This statute is structured, the state has said, to achieve partisan balance. It is designed to do exactly what it has done in every election since it went into effect in 2006, to give you absolutely no choice. That is not the Lopez-Torres situation, where you had incumbents running unopposed because they were in safe districts. That is private choice. This is the decision of the legislature to give to the parties the power to designate who are the judges. And the electorate is left completely in the dark. It's a unique system, but it's a ridiculous system, and I apologize for characterizing it that way, but when you walk into the voting booth and you realize that as long as the judge votes for himself or herself, every single person in Marion County can vote against that judge, or not vote for that judge, you can't really vote against, and that judge will still win. So the question is, what justifies such a unique system? And there simply are not justifications. The argument is we need to balance the views and philosophies of the court. Well, I would argue, as the court noted, that when you're in a court and you're looking for partiality, you're focused on the judge. You're not concerned about what the political affiliation is of the other judges. It's not rational to assume there's a Republican or Democratic way of being a trial judge, and this is not an at-large political body where there is a need, as in the city council and other cases Mr. Fisher cited, where there's a perceived need to let a constituency be heard. Judges don't have constituencies. The second reason the state gives is that we need to guard against the feelings or the fear of partiality. As the court noted, given the importance of being slated and the insignificance of the vote, if I am a Republican and I'm before a Democratic judge, I'm going to know that there's absolutely nothing that I did to elect that judge, and there's nothing I can do to unelect that judge. I can gather every Republican in Marion County to not vote for that judge. He will continue, or she will continue to be a judge. That's going to heighten concerns of partiality. Now, you and I both were, you and your brief, and I, a few minutes ago, were urging Solicitor General Fisher to look at how the election scheme has operated in practice, but what about the fact that the Supreme Court has said that a court must focus on the election requirements themselves and not the manner in which political actors function under those requirements? Yes, and I want us to look at the election requirements. How is this statute set up? This statute tells the world that there's two selections, 16 and 20. I'll use the 16 for the example. It tells the world that in the years that there are 16 judges running for election in Marion County, each party nominates eight. The case, the statute is structurally established to give no voice at the time of the election. Yes, is it possible for third parties to get on the ballot? Yes, it's possible. However, the Supreme Court in Williams v. Rhodes looked at the history of third parties, and the history here is that since 1970, there have been two judicial elections when there have been third party candidates. There's been one when there's more than one, and given that we're dealing with elections with 16 or 20 positions, adding one person does not seriously change the burden on the right to vote. But it does support the state's position that it can be done. Yes, but that doesn't answer the question about the independent, Your Honor. The independent who walks in the voting booth and has had no say in the Democrats and Republicans, who are definitely going to win. Obviously, the third party candidates, when they ran on those two occasions, finished in distant positions. That third party candidate, excuse me, that independent candidate, a voter, excuse me, who wants to vote for a Democrat or Republican, who wants their vote to matter, is told it makes no difference because you did not participate in the primary, you did not participate in slating. Moreover... The government, in their brief at page 29, cites a trial document number 58 at 3 and 4, in which they said non-endorsed candidates sometimes prevail and go on to be elected in the general election. Do you agree with that? There have been very few candidates who were not slated by the party, nevertheless prevailed in the primary. That's very... But this is general election. No, no, no. I'm not sure what Mr. Fischer was referring to, the state was referring to. There has been no non-Democrat or Republican to win since the records that we cited in our appendix that go back to 1970. And as I said, there have only been two elections where third parties have run. This is an extraordinary statute. This is a statute so extraordinary that as the district court noted, the court felt comfortable two months before the election in announcing publicly the judicial assignments that would begin after the election. And of course they felt comfortable doing that because the election was a foregone conclusion. Everyone knew who was going to win, therefore the court felt no problem stating that people who were still judges had not yet been quote unquote elected would occupy these courts. We can't have that and at the same time say that we have a system that is advancing democracy. And how are you defining this meaningful vote term that you use in your presentation? The state argues that you've provided no definition into the record. Well, Your Honor, there is no definition because when we look at Burdick and Anderson, we're dealing with a sliding scale. I think as Burdick noted, the right to vote must mean that you have a chance that the system is structured so that you have a potential voice. What does that mean? Could there be elections like those cited in those cases from 1970 and 1960 in the state's brief where at large candidates were guaranteed a seat? Well, perhaps there could be if given the current law that Burdick and Anderson tells us, if there is justification. That's why this case really is about justification and the justifications that the state gives certainly do not support this highly highly unusual unique system of what I will call an election, but it's not an election. It's a coronation and we can't have a system where you walk into the voting booth and you're not given any choice whatsoever. That burden is not only independent, it does burden the ability of a Democrat or Republican to elect more than half of the positions. Do they have an absolute right to do that? No. But if that vote, if that ability to actually pick who you want to represent you or be judges is burdened, there has to be justification and the justifications offered by the state simply do not have merit and for these reasons the district court should be affirmed. Thank you. Mr. Fischer. You have five minutes, Mr. Fischer. Thank you, Your Honor. Well, you don't get into the balancing test under Anderson and the subsequent cases until you can identify the right that's at stake and Mr. Faulk just said we can't identify the right that is at stake. You don't simply come in and balance what has the legislature achieved versus what are the drawbacks. You have to look at the right, identify it precisely, come to grips with its contours and then decide if there is a balancing to be had. There is nothing here. We look at different dimensions. Is there a right to a contested election? No. Is there a right to a single member district election? No. We can do at large. Is there a right for a party to be able to vote for, I'm sorry, for a voter to be able to vote for its favorite party to sweep all the seats? No. We don't have anything that would somehow be one of the qualities of the right that Mr. Faulk is seeking to achieve here. Now, he talked a little bit about Williams versus Rhodes and looking at the history of third party and independent candidates there. Well, that was because that was about ballot access. That's not an issue here. Here, I think we take as a given that the ballot access for third parties and independents is constitutionally sufficient. Indeed, this court in Holvey-Simcox said that the third party access is sufficient. So you've got eight Democrats, you've got eight Republicans, the voters of Marion County come in and they give one of the judges nine votes. He's a judge. Yeah. Same as for the councilman in Lopez Torres. Unopposed, nine votes, that person wins. There's no difference between this scenario and a scenario where someone is unopposed in any other election. There are opportunities for independents to go out and recruit people that they agree with to run, whether they run as independents or as third party candidates. And there's no right, I think, furthermore, it's worth noting to have a particular name or partisan label on a ballot next to a favored candidate. That's the other kind of vein of Supreme Court precedence that we see where the idea that you can say, well, I want so and so to be on the ballot with such and such a label, it just doesn't exist. And I think that that's the other thing that the Court would end up having to embrace if it ruled for common cause. This idea that, well, you know, there are perhaps candidates that independents would favor, and if they want to put them on the ballot and have the Democrat or Republican label, that's their entitlement. The Supreme Court has said that's not a particular right as part of the right to vote. So I think that the right that Mr. Falk is seeking to vindicate here really falls short in any way and any measure that you look at. In your reply brief at page 15 you indicated your position that common cause objection is really to partisan elections rather than appointment. Well, I think the theme that we get from their brief is a frustration with a system that in their view favors the two major parties. And they perhaps see this as a way to get out from under a system where the Republicans and the Democrats seem to dominate. But if that's what they're interested in, I think our point is if that's what they're interested in, that isn't going to be solved by permitting one party or the other to sweep all the seats. It's just going to be exacerbated. This is a system where as an independent or a third party... Well, if you had an appointment system, it wouldn't... Naturally. Naturally, of course. But I don't think they're claiming there's a constitutional right to a merit selection or appointment system. It's been recommended by a number of people, including the Supreme Court itself, or at least members. And it is a system that succeeds fantastically on many levels, Your Honor. Marion County is unique in a number of ways. You also have township judges, right? Well, we have... I'm trying to think if we've done away with those, but we certainly have a small claims docket that's divided up by township. But they're part of the Superior Court. But if there's nothing further, I'll just leave it at that. Thank you. Thank you, Mr. Fisher. Thanks to both counsel. Case will be taken under advisement. And we move to the fourth case this morning.